

**DENNIS P. CAGLIA, ESQUIRE**
**Attorney for Defendant**
**502 Swede Street**
**Norristown, PA 19401**
**(610) 275-7770**                                    **Attorney for James Cook**

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | |
| | : | |
| JAMES COOK | : | #08-41 |

## MOTION TO DISMISS (OUTRAGEOUS GOVERNMENT CONDUCT)

Defendant, James Cook, by and through his attorney, Dennis P. Caglia, Esquire hereby moves this Court to dismiss this Indictment and in support thereof avers the following:

1.      Defendant, James Cook, was charged with attempting to possess with intent to distribute cocaine as a result of a "reverse sting" operation where a confidential informant (CI) made arrangements to sell Defendant ten ounces of cocaine.

2.      Although Defendant worked with CI in the past in conjunction with Defendant's general contracting business, Defendant had no prior history of cocaine purchases or sales with CI.

3.      Defendant previously lent money to CI to assist CI with prior criminal cases and also lent CI money for other purposes.

4.      At least four telephone conversations between CI and Defendant were recorded, as was a post arrest statement of Defendant.

5.      During the four recorded telephone conversations, and as explained by Defendant in his post arrest statement, CI approached Defendant

MAY 1 2008

with a sense of urgency to request a loan of "ten stacks" ($10,000) in order to pay his attorney in regard to the case against him.

      6.     Defendant was aware of the criminal case against CI and of CI's need to cooperate with the government in order to mitigate CI's criminal penalties.

      7.     Although not a part of any recorded telephone conversations, CI told Defendant the loan would be secured by Defendant holding ten ounces of cocaine for CI.

      8.     Under pressure from the government, CI made arrangements to meet Defendant in order to get a loan from him to pay his legal fees.

      9.     During the fourth recorded telephone conversation, on the day of Defendant's arrest, CI and Defendant agreed to meet for coffee and at no time was a drug deal discussed.

      10.    Upon entering Defendant's truck CI almost immediately gave Defendant a bag of purported cocaine and the signal to government agents that the transaction was completed.

      11.    The entire episode is a result of the outrageous conduct of the government and/or government agent's which attempted to create a criminal case against Defendant, where none previously existed, in order to have CI cooperate with, and placate, the government in regard to CI's separate criminal case.

      WHEREFORE, Defendant respectfully request that this Indictment be dismissed.

                               D.P.C./s/ _____

                               Dennis P. Caglia, Esquire
                               Attorney for Defendant,
                               James Cook

Date:  May 1, 2008

**DENNIS P. CAGLIA, ESQUIRE**
**Attorney for Defendant**
**502 Swede Street**
**Norristown, PA 19401**
**(610) 275-7770**                                      **Attorney for James Cook**

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

UNITED STATES OF AMERICA                  :
                                          :
            vs.                           :
                                          :
      JAMES COOK                          :        #08-41

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

This indictment resulted from outrageous government conduct constituting

a deprivation of due process under the Fifth and Fourteenth Amendments of the

United States Constitution.

That Defendant is charged with one count of attempting to possess with

intent to distribute cocaine and one count of being a convicted felon in

possession of a firearm in interstate travel. According to the government, an adult

agent of the government attempted to sell cocaine to the defendant after the

government initiated the transaction and under the agent's own volition (without

being forced or threatened to do so).

Though it is not a per se due process violation to convict a defendant for a

drug offense where it is the government that initiates the alleged criminal activity

and where the government either purchases or supplies the drug, which party

initiates the alleged crime is relevant and important in assessing the degree of

government involvement in setting up the crime. Hampton v. United States, 425 U.S. at 491, 96 S.Ct. at 1650 (Powell, J., concurring); United States v. Gonzalez-Benitez, 537 F.2d 1051, 1055 (9th Cir.), cert. denied, 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976). Cf. United States v. Rueter, 536 F.2d 296 (9th Cir. 1976).

The extent of a Defendant's prior criminal involvement, though not dispositive, is relevant to the issue of outrageous conduct and whether the defendant or the government should ultimately be held accountable for the instigation of the crime. United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); United States v. Wylie, 625 F.2d 1371, 1374 (9th Cir. 1980), cert. denied, ---- U.S. -----, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).

In United States v. Russell, 411 U.S. 423, 431-32 (1973), Justice Rehnquist, writing for a majority of the Court, noted that someday the Court might be presented with a situation "in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." This was the first time the Supreme Court officially recognized what is now commonly known as a due process defense based on governmental overreaching and outrageous misconduct. Although Justice Rehnquist's statement in Russell is essentially dicta, after the Court's decision in Hampton v. United States, 425 U.S. 484 (1976), it was clear that a majority of the members of the Court believed that the Due Process Clause could be invoked as a ground for the dismissal of criminal charges where governmental involvement in the criminal activities being prosecuted reached "a demonstrable level of outrageousness."

In Sorrells v. United States, 287 U.S. 435 (1932) and Sherman v. United States, 356 U.S. 369 (1958), the Court recognized and sought to delineate the contours of the entrapment defense. In Sorrells, a government prohibition agent appealed to the sentiments of a "comrade in arms in the World War" (Sorrells) and successfully induced him to sell illicit whiskey. Sorrells was promptly arrested and convicted of this offense. Sorrells was the first case in which the Supreme Court upheld the validity of an entrapment defense. Later in Sherman, the Court set forth what is now known as the subjective theory of entrapment. After noting that the Court firmly recognized the defense of entrapment, Chief Justice Warren, writing for the majority, stated: "The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, a different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." Id at 372 (quoting in part Sorrells, 287 U.S. at 442).

The question of whether the involvement of government agents rises to the level of outrageous governmental conduct is a question of law for the court to determine. United States v. Citro, 842 F.2d at 1152-3; United States v. Bogart, 783 F.2d at 1431; United States v. Ramirez, 710 F.2nd 535, 539 (9th Cir. 1983); United States v. McQuin, 612 F.2d at 1197; United States v. Prairie, 572 F.2d at 1319. The issue may properly be raised and decided by a pretrial motion to

dismiss the indictment under Fed. R. Crim. P. 12(b). United States v. Batres-Santolino, 521 F. Supp. 744 (N.D. Cal. 1981); see also United States v. Duncan, 896 F.2d 271, 274 (7th Cir. 1990) (outrageous government conduct claim must be made by pretrial motion). In Batres-Santolino, the court conducted an evidentiary hearing after which it dismissed the indictment on due process grounds. Other courts have decided to defer ruling on the pretrial motion until after trial. United States v. Marcello, 537 F. Supp. 402 (C.D. Cal. 1982); Although there has been some suggestion that the nature of the police conduct could be submitted to the jury, it appears that the trial court should make the determination. United States v. Twigg, 588 F.2d at 379 n.8; United States v. Johnson, 565 F.2d 179,181 (lst Cir. 1977), cert. denied, 434 U.S. 1075 (1978).

On appeal, the issue of whether the government's conduct violated the defendant's due process rights is reviewed de novo because the issue presents a question of law. United States v. Emmert, 829 F.2d at 810; United States v. Stenberg, 803 F.2d at 428 n.6 (citing Bogart, 783 F.2d at 1431). The court will view the evidence in the light most favorable to the government, and will accept the district court's factual findings unless they are clearly erroneous. Emmert, 829 F.2d at 810-11 (citing Bagnariol, 665 F.2d at 880).

The targeting of a defendant is sometimes an issue. In United States v. Luttrell, 923 F.2d 764 (9th Cir. 1991) (en banc), an en banc panel of the Ninth Circuit vacated that part of a three-judge panel ruling which had held that the government must have "reasoned grounds" based on the due process clause to investigate an individual. It joined four sister circuits which also rejected such a

test. Id. at 764 (citing the District of Columbia Circuit and the Tenth, Third, and Second Circuits). The Eighth Circuit, in United States v. Jacobson, 893 F.2d 999 (8th Cir. 1990), rev'd on other grounds, 112 S.Ct. 1535 (1992) held to the contrary, requiring that the government show reasonable suspicion, based on articulable facts, to justify targeting an individual for an undercover sting operation.

For these reasons, the Defendant requests that the Indictment against him be dismissed.

Respectfully submitted,

D.P.C./s/

Dennis P. Caglia, Esquire
Attorney for Defendant,
James Cook

**DENNIS P. CAGLIA, ESQUIRE**
**Attorney for Defendant**
**502 Swede Street**
**Norristown, PA 19401**
**(610) 275-7770**                                    **Attorney for James Cook**

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

UNITED STATES OF AMERICA            :
                                    :
              vs.                   :
                                    :
        JAMES COOK                  :        #08-41

## CERTIFICATION OF SERVICE

I, DENNIS P. CAGLIA, Esquire, hereby certify that on the date set forth

below, a true and correct copy of the foregoing Motion to Dismiss, and

Memorandum of Law in support thereof were served upon the following counsel

in the manner indicated below.

Service by first class mail as follows:

Shaun Weede, Esquire
United States Attorney's Office
1007 Orange Street – Suite 700
P. O. Box 2046
Wilmington, DE 19801

D.P.C./s/

Dennis P. Caglia, Esquire
Attorney for Defendant,
James Cook

Date: May 1, 2008

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

UNITED STATES OF AMERICA   :
           :
    vs.       :
           :
   JAMES COOK    :  #08-41

---

**ORDER**

AND NOW, this  day of    , 2008, IT IS HEREBY

ORDERED and DECREED that the Court having considered Defendant, James

Cook's Motion to Dismiss that the Indictment against James Cook be dismissed.


           BY THE COURT:


           _____

_____                 J.


cc: Dennis P. Caglia, Esquire
  Shaun Weede, Esquire